IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

VINCENT HARVEY and : 
RICHARD HAWKINS, :
    Plaintiffs :
     :     No. 3:18-cv-939
    v. :
     :     (Judge Rambo)
CO1 D. CLINE, *et al.*, :
    Defendants :

## MEMORANDUM

This matter is before the Court pursuant to the motion for summary judgment (Doc. No. 75) filed by Defendants CO1 D. Cline ("Cline"), Tammy Ferguson ("Ferguson"), and the Pennsylvania Department of Corrections ("DOC"). Despite receiving an extension of time to do so (Doc. Nos. 79, 80), *pro se* Plaintiffs Vincent Harvey ("Harvey") and Richard Hawkins ("Hawkins") have not filed a response to the motion. Accordingly, because the time for responding has expired, the motion for summary judgment is ripe for disposition.

## I.    BACKGROUND

On May 4, 2018, Plaintiffs, who were both incarcerated at the State Correctional Institution Benner Township ("SCI Benner Township") at that time,[1] initiated the above-captioned case by filing a complaint pursuant to 42 U.S.C. § 1983 against Defendants Cline, Ferguson, DOC, and inmate Michael Peterson

---

[1] Plaintiff Harvey was released from DOC custody in 2019. (Doc. No. 55.)

("Peterson").  (Doc. No. 1.)  Plaintiffs' claims stem from two (2) separate incidents that occurred on the same day with inmate Peterson.  (*Id.*)  Plaintiffs allege various constitutional and state law violations arising from these incidents.  (*Id.*)  They seek damages as well as injunctive relief.[2]  (*Id.*)

Defendants Cline, Ferguson, and the DOC filed an answer on August 30, 2018.  (Doc. No. 18.)  Inmate Peterson was dismissed without prejudice pursuant to Rule 4(m) of the Federal Rules of Civil Procedure on April 30, 2019.  (Doc. No. 33.)  Subsequently, counsel appeared on behalf of Plaintiffs.  (Doc. No. 57.)  The Court then granted the parties extensions of time to complete fact discovery and file dispositive motions.   (Doc. Nos. 60, 62, 68.)   Counsel subsequently moved to withdraw his representation of Plaintiffs (Doc. No. 73), which the Court granted (Doc. No. 74).  Defendants filed their motion for summary judgment on November 23, 2020, arguing, *inter alia*, that Plaintiff Hawkins had failed to exhaust his administrative remedies prior to filing suit.  (Doc. Nos. 75, 76, 77.)  In its December 7, 2020 Order, the Court informed the parties that, pursuant to *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018), it would consider the exhaustion issue in the context of summary judgment, and by doing so, would consider matters outside the pleadings

---

[2] Plaintiff Harvey's release from custody moots his claims for injunctive relief.  *See Robinson v. Cameron*, 814 F. App'x 724 (3d Cir. 2020).

in its role as factfinder.  (Doc. No. 78.)  Accordingly, the Court directed Plaintiffs to respond to Defendants' motion within twenty-one (21) days.  (*Id.*)  On December 28, 2020, Plaintiffs moved for a forty-five (45) day extension to respond.  (Doc. No. 79.)  The Court granted their motion in an Order entered December 30, 2020.  (Doc. No. 80.)  Despite receiving an extension of time, however, Plaintiffs have not responded to the motion for summary judgment.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law.  *Id.* at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992).  An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element

of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.  *See Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party.  *White*, 826 F.2d at 59.  In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor.  *Id.* (citations omitted).  However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1.  A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant.  These rules apply with equal force to all parties.  *See Sanders v. Beard*, No. 09-CV-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); *Thomas v. Norris*, No. 02-CV-01854, 2006 WL

2590488, at *4 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules

of Civil Procedure).

## III.   STATEMENT OF MATERIAL FACTS[3]

### A.   Facts Regarding Administrative Exhaustion

The DOC has established a grievance review system "to provide prisoners in

its custody with a regular procedure to resolve problems or other issues arising

during the course of their confinement."  (Doc. No. 76 ¶ 1.)  The grievance system

policy is set forth in DC-ADM 804.  (*Id.*)  Under DC-ADM 804, "any inmate

---

[3] The Local Rules of Court provide that in addition to filing a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried." M.D. Pa. L.R. 56. 1.  The Rule further requires the inclusion of references to the parts of the record that support the statements.  *Id.* Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.  *See id.*  Unless otherwise noted, the background herein is derived from Defendants' Rule 56.1 statement of material facts.  (Doc. No. 76.)

Plaintiffs did not file a response to Defendants' statement of facts in compliance with M.D. Pa. L.R. 56.1.  However, they have filed a verified complaint, which may be treated as an affidavit in opposition to summary judgment.  *See Ziegler v. Eby*, 77 F. App'x 117, 120 (3d Cir. 2003) (noting that "the complaint was not verified, thereby precluding the District Court from treating it as the equivalent of an affidavit for purposes of Federal Rule of Civil Procedure 56(e)"); *Reese v. Sparks*, 760 F.2d 64, 67 (3d Cir. 1985) (treating verified complaint as an affidavit on summary judgment motion); *see also Boomer v. Lewis*, No. 06-850, 2009 WL 2900778, at *2 n.4 (M.D. Pa. Sept. 9, 2009) ("A verified complaint may be treated as an affidavit in support of or in opposition to a motion for summary judgment if the allegations are specific and based on personal knowledge.").  However, this Court is not "required to accept unsupported, self-serving testimony as evidence sufficient to create a jury question."  *Hammonds v. Collins*, Civ. No. 12-236, 2016 WL 1621986, at *3 (M.D. Pa. Apr. 20, 2016) (citing *Brooks v. Am. Broad. Co.*, 999 F.2d 167, 172 (6th Cir. 1993)).  Accordingly, unless otherwise noted, the Court deems the facts set forth by Defendants to be undisputed.  *See* M.D. Pa. LR 56. 1; Fed. R. Civ. P. 56(e)(2).

personally affected by a Department or institutional action or policy or by the action of a Department employee may file a grievance." (*Id.* ¶ 2.)  Informal resolution prior to submitting a grievance is encouraged.  (*Id.*)  A grievance must be submitted to the Facility Grievance Coordinator, "using the grievance form that is available on all housing units or blocks." (*Id.*)  All inmates may file grievances, and all inmates are provided with a copy of the grievance policy "when coming into one of the Department's diagnostic and classification centers and are provided notice of any revisions to the policy and procedures manual." (*Id.* ¶¶ 3-4.)  Moreover, "a copy of the grievance system policy and procedures manual is available on all housing blocks and in the institutional library for inmates to review or request to obtain copies." (*Id.* ¶ 4.)

DC-ADM 804 sets forth three (3) levels of grievance review: "(1) an initial review by a Grievance Officer; (2) appeal to the Facility Manager or designee; and (3) appeal to the SOIGA for final review." (*Id.* ¶ 5.)  When submitting a grievance, the inmate must include a statement of relevant facts, as well as the date, time, and location of the events.  (*Id.* ¶ 7.)  The inmate must also identify the individuals involved, state the claims he wishes to raise, and include a request for the relief sought.  (*Id.*)  A grievance for initial review must be submitted to the Facility Grievance Coordinator "within 15 working days after the event upon which the

claim is based."  (*Id.* ¶ 9.)  The Facility Grievance Coordinator assigns a tracking number to every grievance upon receipt and enters it into the Automated Inmate Grievance Tracking System.  (*Id.* ¶ 10.)

An inmate may appeal an Initial Review Response or grievance rejection to the Facility Manager (Superintendent) within fifteen (15) working days from the date of the response or rejection.  (*Id.* ¶ 11.)  The appeal "must contain the reasons for the appeal."  (*Id.* ¶ 12.)  "Only an issue that was raised for Initial Review, determination of frivolousness, rejection and/or placement on grievance restriction may be appealed."  (*Id.*)  The Facility Manager provides a written response which "may, among other things: Uphold the Initial Review Response, Uphold Inmate, Dismiss, Uphold in Part/Deny in Part, or Remand."  (*Id.* ¶ 13.)

An inmate may appeal the Facility Manager's response within fifteen (15) working days to the "Secretary's Office of Inmate Grievances and Appeals [('SOIGA')]."  (*Id.* ¶ 14.)  "Only issues raised in both the original grievance and the appeal to the Facility Manager may be appealed to" SOIGA.  (*Id.* ¶ 15.)  Along with the appeal, the inmate must include copies of the Initial Grievance, Initial Review Response, Inmate Appeal to the Facility Manager, and the Facility Manager's response.  (*Id.* ¶ 16.)  SOIGA "may, among other things: Uphold Response, Uphold Inmate, Dismiss, Uphold in Part/Deny in Part, or Remand."  (*Id.* ¶ 17.)  When an

appeal is remanded by SOIGA, "notification is provided to both the inmate and facility, and the facility provides a revised response to the inmate." (*Id.* ¶ 18.) If an inmate is dissatisfied with the revised response, he "may appeal the revised response to final review again within fifteen (15) working days of the date of the revised response." (*Id.* ¶ 19.)

Plaintiff Hawkins "did not exhaust a grievance in connection with the November 7, 2017 incident." (*Id.* ¶ 21.) Plaintiff Harvey did file Grievance No. 708188 regarding the incident. (*Id.* ¶ 22.) His grievance did not name Defendant Ferguson and did not set forth a request for damages. (*Id.* ¶¶ 23-24.)

### B.    Facts Related to Plaintiff Harvey

Over the years, Defendant Cline never charged Plaintiff Harvey with any misconducts, and Plaintiff Harvey never filed grievances against Defendant Cline. (*Id.* ¶ 25.) They "had an amicable relationship and there was no bad blood between the two." (*Id.* ¶ 26.)

Inmate Peterson "had never threatened" Plaintiff Harvey. (*Id.* ¶ 27.) "It was a normal day leading to the incident." (*Id.* ¶ 28.) On the day of the incident, inmate Peterson "came to [Plaintiff] Harvey's cell and said 'you know what the f*** it is' while holding something in his hand." (*Id.* ¶ 29.) Plaintiff Harvey "started calling for his cellmate, and [i]nmate Peterson responded 'you're a b****.'" (*Id.* ¶ 30.)

9

Plaintiff Harvey "charged Peterson and hit him with a fan, destroying the fan, at the 'moment that [Peterson] turn[ed] his head to look towards the door.'" (*Id.* ¶ 31.) After Plaintiff Harvey hit him, inmate Peterson hit Plaintiff Harvey "with a weapon similar to a pen or marker that had been sharpened." (*Id.* ¶ 32.) Inmate Peterson hit Plaintiff Harvey on his forearm, lower jaw, and left hip. (*Id.* ¶ 33.) Plaintiff Harvey "does not know if there was any blood visible on his clothes, and believes that his beard consumed any blood from his mouth." (*Id.* ¶ 34.)

Defendant Cline responded to Plaintiff Harvey's cell and "asked 'what's going on?' and ordered [inmate] Peterson out of the cell." (*Id.* ¶ 35.) Plaintiff Harvey was "extra tight" with Plaintiff Hawkins in prison, and called Plaintiff Hawkins his "brother." (*Id.* ¶ 36.) "Word got back to [Plaintiff] Hawkins that [i]nmate Peterson 'assaulted' [Plaintiff] Harvey." (*Id.* ¶ 37.) Plaintiff Harvey knew that Plaintiff Hawkins "would avenge for him." (*Id.* ¶ 38.) Plaintiff Harvey "did not notify [Defendant] Cline or anyone." (*Id.* ¶ 39.) Plaintiff Harvey sued Defendant Ferguson "because she is responsible for everything in the jail, not because she was personally involved in any fights." (*Id.* ¶ 40.)

C.    **Facts Related to Plaintiff Hawkins**

Plaintiff Hawkins "had a respectful relationship with [Defendant] Cline over the years." (*Id.* ¶ 41.) Defendant Cline "never charged [Plaintiff] Hawkins with any

10

misconducts[,] and [Plaintiff] Hawkins never filed any grievances against [Defendant] Cline." (*Id.* ¶ 42.) Moreover, Plaintiff Hawkins had a "friendly relationship" with inmate Peterson. (*Id.* ¶ 43.) They had never had any altercations, and inmate Peterson had never threatened him. (*Id.*) Plaintiff Hawkins "did not witness any incident between [Plaintiff] Harvey and Peterson and did not see Peterson allegedly stab [Plaintiff] Harvey." (*Id.* ¶ 44.)

Plaintiff Harvey was one of Plaintiff Hawkins' "best friends in prison." (*Id.* ¶ 45.) In the evening of November 7, 2017, Plaintiff Hawkins "situated himself in the vestibule outside of [the] medication line." (*Id.* ¶ 46.) Plaintiff Hawkins then hit inmate Peterson. (*Id.* ¶ 47.) His punch "knocked [inmate] Peterson to the ground where an attack ensued which [Plaintiff] Harvey eventually joined." (*Id.* ¶ 48.) Defendant Cline "administered OC spray, ending the incident." (*Id.* ¶ 49.)

Plaintiff Hawkins sued Defendant Ferguson because "she was the superintendent." (*Id.* ¶ 50.) Moreover, despite including allegations about missing property in the complaint "he does not [k]now who lost his property." (*Id.* ¶ 51.)

## IV.   DISCUSSION

### A.   Claims Pursuant to 42 U.S.C. § 1983

#### 1.   Claims Against Defendant DOC

As noted *supra*, Plaintiffs have named the DOC as a Defendant in this action. The DOC, however, is immune from suit in federal court pursuant to the Eleventh Amendment.  *See Kreutzberger v. Pa. Dep't of Corr.*, 684 F. App'x 107, 108 (3d Cir. 2017); *Lavia v. Pa. Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000).  Moreover, even if the Eleventh Amendment did not bar Plaintiffs' claims against the DOC, the DOC is also not a "person" that can be sued under § 1983.  *See Pettaway v. SCI Albion*, 487 F. App'x 766, 768 (3d Cir. 2012).  The Court, therefore, will grant summary judgment to Defendants with respect to Plaintiffs' § 1983 claims against the DOC.

#### 2.   Claims Against Defendant Ferguson

Plaintiffs have named Tammy Ferguson, who was then the Superintendent of SCI Benner Township, as a Defendant in this matter.  Plaintiffs assert that Plaintiff Harvey wrote to her about "this matter (the November 7, 2017 incident) and about other instances where [inmate] Peterson targeted Plaintiff Harvey."  (Doc. No. 1 ¶ 55.)  They claim that she did not investigate these complaints.  (*Id.*)  They maintain further that she was aware for two (2) months prior to the incident that inmate

12

Peterson posed a serious danger.  (*Id.* ¶¶ 101-02.)  Defendants assert that they cannot maintain a claim against her.  (Doc. No. 77 at 12-13.)   For the reasons discussed below, the Court agrees.

Under § 1983, individual liability may be imposed only if the state actor played an "affirmative part" in the alleged misconduct.  *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)).  Liability "cannot be predicated solely on the operation of *respondeat superior*."  *Id.*  In other words, defendants "must have personal involvement in the alleged wrongs . . . shown through allegations of personal direction or of actual knowledge and acquiescence."  *Atkinson v. Taylor*, 316 F.3d 257, 271 (3d Cir. 2003); *Rode*, 845 F.2d at 120-08.  Moreover, the filing of a grievance, participation in "after-the-fact" review of a grievance, or dissatisfaction with the response to an inmate's grievance, does not establish the involvement of officials and administrators in any underlying constitutional deprivation.  *See Pressley v. Beard*, 266 F. App'x 216, 218 (3d Cir. 2008) ("The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them."); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that allegations that prison officials responded inappropriately to inmate's later-filed grievances do not

13

establish the involvement of those officials and administrators in the underlying constitutional deprivation); *Ramos v. Pa. Dep't of Corr.*, No. 06-1444, 2006 WL 2129148, at *3 (M.D. Pa. July 27, 2006) ("[C]ontentions that certain correctional officials violated an inmate's constitutional rights by failing to follow proper procedure or take corrective action following his submission of an institutional grievance are generally without merit."); *Wilson v. Horn*, 971 F. Supp. 943, 947 (E.D. Pa. 1997) (noting that a complaint alleging that prison officials failed to respond to the inmate-plaintiff's grievance does not state a constitutional claim), *aff'd*, 142 F.3d 430 (3d Cir. 1998); *see also Rode*, 845 F.2d at 1207 (concluding that where a defendant, after being informed of the violation through the filing of grievances, reports, or appeals, failed to take action to remedy the alleged wrong is not enough to show that the defendant had the necessary personal involvement); *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (concluding that a mere "linkage in the prison chain of command" is not sufficient to demonstrate personal involvement for purposes of a civil rights action).

With respect to supervisory liability, there are two theories: "one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm, and another under which they can be liable if they participated in violating plaintiff's rights, directed others to

violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010 (quotation and alteration marks omitted).  As to the second theory, a plaintiff must show that each defendant personally participated in the alleged constitutional violation or approved of it.  *See C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir. 2005); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). With respect to the first, "the plaintiff must establish that: (1) existing policy or practice creates an unreasonable risk of constitutional injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." *Merring v. City of Carbondale*, 558 F. Supp. 2d 540, 547 (M.D. Pa. 2008) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)).

Here, while Plaintiffs aver that Defendant Ferguson was aware of a risk posed by inmate Peterson, nothing in the record before the Court indicates that she was present during the incidents on November 7, 2017 and had a chance to intervene. *Cf. Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002) (noting that "a corrections officer's failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so").  Moreover, while Plaintiffs

aver that Defendant Ferguson was made aware of the incident, they provide no evidence of a policy, practice, or custom that caused the constitutional violations and provide no evidence that Defendant Ferguson participated in, directed others, or had knowledge of violations of Plaintiffs' rights.  Plaintiffs, therefore, cannot maintain a supervisory liability claim against Defendant Ferguson.

Plaintiffs also suggest that Defendant Ferguson is liable for failing to provide adequate training and supervision.  (Doc. No. 1 ¶ 111.)  "Under Section 1983, a supervisor may be liable for [his or her] failure to train or supervise employees." *Whitfield v. City of Phila.*, 587 F. Supp. 2d 657, 666 (E.D. Pa. 2008).  A claim for liability based upon a failure to train involves four (4) elements: (1) that an existing policy created an unreasonable risk of constitutional injury; (2) the supervisor was aware of this unreasonable risk; (3) the supervisor was indifferent to the risk; and (4) the injury resulted from the policy or practice.  *See Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989).  A supervisor may be held liable where a need for "more or different training . . . is so obvious, and the inadequacy so likely to result in constitutional violations, that the failure to train . . . can fairly be said to represent official policy," and where that failure to train "actually causes injury," a supervisor may be held liable.  *City of Canton v. Ohio*, 489 U.S. 378, 390 (1989).  In addition,

> [i]n resolving the issue of [supervisory] liability, the focus must be on adequacy of the training program in relation to the tasks the particular

16

> officers must perform.  That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [supervisor], for the officer's shortcomings may have resulted from factors other than a faulty training program . . . .    Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training . . . .    Moreover, for liability to attach . . . the identified deficiency in [the] training program must be closely related to the ultimate injury.

*Id.* at 390-91.  As noted *supra*, Plaintiffs have failed to present evidence suggesting that an existing policy created a risk of constitutional injury.  Moreover, Plaintiffs have made only conclusory failure to train allegations.  These allegations, without more, are insufficient to maintain a failure to train and supervise claim against Defendant Ferguson.  The Court, therefore, will grant summary judgment with respect to Plaintiffs' § 1983 claims against Defendant Ferguson.

### 3.    Administrative Exhaustion

Pursuant to the Prison Litigation Reform Act ("PLRA"), a prisoner must pursue all available avenues of relief through the applicable grievance system before initiating a federal civil rights action.  *See* 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues.").  Section 1997e provides, in relevant part, that "[n]o action shall be brought with respect to prison conditions under [S]ection 1983 of this title, or any other [f]ederal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative

remedies as are available are exhausted." *See* 42 U.S.C. § 1997e(a).  The exhaustion requirement is mandatory.  *See Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *see also Booth*, 532 U.S. at 742 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures").

The Third Circuit has further provided that there is no futility exception to Section 1997e's exhaustion requirement.  *See Nyhuis v. Reno*, 204 F.3d 65, 75-76 (3d Cir. 2000).  Courts have typically required across-the-board exhaustion by inmates seeking to pursue claims in federal court.  *See id.*  Additionally, courts have interpreted this exhaustion requirement as including a procedural default component, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding with a claim in federal court.  *See Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004); *see also Oriakhi v. United States*, 165 F. App'x 991, 993 (3d Cir. 2006) (providing that "there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court").  Courts have also concluded that inmates who fail to complete the prison grievance process in a full and timely manner are barred from subsequently litigating claims in federal court.  *See, e.g., Bolla v. Strickland*, 304 F. App'x 22 (3d Cir. 2008).

18

This broad rule favoring full exhaustion allows for a narrowly-defined exception; if the actions of prison officials directly caused the inmate's procedural default as to a grievance, the inmate will not be required to comply strictly with this exhaustion requirement. *See Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000). However, courts also recognize a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." *See Davis v. Warman*, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will be excused only "under certain limited circumstances," *see Harris v. Armstrong*, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate may defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." *See Warman*, 49 F. App'x at 368.

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances warranting a departure from strict compliance with the exhaustion requirement, courts frequently reject inmate requests for their failure to exhaust to be excused. An inmate, therefore, may not excuse a failure to comply with these grievance procedures in a timely manner by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. *See Harris*, 149 F. App'x at 59. Furthermore, an

19

inmate may not avoid this exhaustion requirement by merely alleging that the administrative policies were not clearly explained to him. *See Warman*, 49 F. App'x at 368. Consequently, an inmate's confusion regarding these grievances procedures does not, alone, excuse a failure to exhaust. *See Casey v. Smith*, 71 F. App'x 916 (3d Cir. 2003); *see also Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is well established that 'ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing.'" (citations omitted)).

Recently, the Supreme Court considered what renders administrative remedies unavailable to an inmate such that a failure to exhaust may be excused. *See Ross v. Blake*, 136 S. Ct. 1850 (2016). The Court noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *See id.* at 1859. First, an administrative procedure is not available "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *See id.* Second, a procedure is not available when it is "so opaque that it becomes, practically speaking, incapable of use." *See id.* Finally, a procedure is unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misinterpretation, or intimidation." *See id.* at 1860. However, "once the defendant

has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him." *See Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018).   The Third Circuit recently established that:

> to defeat a failure-to-exhaust defense based on a misrepresentation by prison staff, an inmate must show (1) that the misrepresentation is one which a reasonable inmate would be entitled to rely on and sufficiently misleading to interfere with a reasonable inmate's use of the grievance process, and (2) that the inmate was actually misled by the misrepresentation.

*Hardy v. Shaikh*, 959 F.3d 578, 588 (3d Cir. 2020).

Defendants maintain that they are entitled to summary judgment with respect to Plaintiff Hawkins' claims because he did not properly exhaust his administrative remedies.  (Doc. No. 77 at 5.)   In support of their argument, Defendants have provided a declaration from Helen Shambaugh, a Grievance Officer with SOIGA. (Doc. No. 76-1.)  She avers that she "checked [SOIGA's files] for grievances filed by the Plaintiffs against Officer Cline and Tammy Ferguson regarding an incident on November 7, 2017, wherein Plaintiffs claim that they were assaulted by a fellow inmate." (*Id.* ¶ 22.)  Plaintiff Hawkins did not file a grievance, but Plaintiff Harvey did. (*Id.* ¶¶ 22-23.)

Plaintiffs have not responded to Defendants' motion for summary judgment. In their verified complaint, however, they state that they "fully and properly

21

exhausted their available administrative remedies prior to bringing the instant action." (Doc. No. 1 ¶ 57.) Plaintiff Harvey's conclusory allegation, without any accompanying evidence, such as any grievance he attempted to submit, does not create a genuine issue of material fact with respect to exhaustion. *See Maclary v. Carroll*, 142 F. App'x 618, 620 (3d Cir. 2005) (concluding that inmate-plaintiff's allegation that he filed unanswered and unprocessed grievances did not create a genuine issue of material fact because he failed to offer any support for his bare assertions); *Keys v. Caroll*, No. 10-cv-1570, 2012 WL 4472020, at *8 (M.D. Pa. Sept. 26, 2012) (concluding that inmate-plaintiff's reliance on the complaint, deposition testimony, and affidavit that he exhausted his administrative remedies was not sufficient to withstand summary judgment because the allegations were conclusory and made without evidentiary support). Moreover, the fact that Plaintiff Harvey filed a grievance regarding the incident "does not excuse [Plaintiff Hawkins] from filing his own grievance. To allow [Plaintiff Harvey] to circumvent the PLRA's exhaustion requirement because other inmates filed similar grievances would be contrary to Congress's intent in enacting the [PLRA]." *Laureano v. Pataki*, No. 99Civ.10667 (LAP), 2000 WL 1458807, at *2 (S.D.N.Y. Sept. 29, 2000); *see also Martin v. Gold*, No. 1:05-cv-28, 2005 WL 1862116, at *7 (D. Vt. Aug. 4, 2005) (citing *Laureano* for the same conclusion); *cf. Boyer v. Taylor*, No.

22

06-694-GMS, 2013 WL 1332443, at *4 n.6 (D. Del. Mar. 30, 2013) (noting that "vicarious exhaustion" has not been recognized "except in some circuits when it has been permitted in § 1983 class actions filed by inmates").

Plaintiff Hawkins, therefore, has not refused the defense that he failed to properly exhaust his claims against Defendants that are related to the November 7, 2017 incident. Accordingly, because the PLRA requires full and proper exhaustion prior to the initiation of Plaintiff Hawkins' claims in federal court, and this Court cannot excuse compliance with those requirements, Defendants' motion for summary judgment will be granted on the basis that Plaintiff Hawkins failed to properly exhaust his administrative remedies as to his claims against them related to the November 7, 2017 incident.

### 4. Eighth Amendment Claims

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on prisoners. There are several types of Eighth Amendment claims, including claims alleging: denial of, or inadequate access to, medical care; exposure to adverse conditions of confinement; and the use of excessive force by prison guards. An Eighth Amendment claim includes both objective and subjective components. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Serious hardship to the prisoner is required to satisfy the Eighth Amendment's objective component.

23

*See id.*  The subjective component is met if the person or persons causing the deprivation acted with "a sufficiently culpable state of mind."  *See id.*

### a.       Failure to Protect

The Eighth Amendment requires prison officials to "take reasonable measures to protect prisoners from violence at the hands of other prisoners."  *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).  While prison officials have the duty to protect prisoners from attacks by other prisoners, not every injury suffered by a prisoner at the hands of another equates to constitutional liability for the officials responsible for that inmate's safety.  *Id.* at 833-34.  Rather, an inmate raising a failure to protect claim under the Eighth Amendment must establish that a prison official both knew of and chose to disregard an "excessive risk to inmate health or safety."  *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) (citing *Farmer*, 511 U.S. at 837).  This knowledge requirement is subjective, "meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware."  *Id.*; *see also Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997).  Actual knowledge may be proven circumstantially in situations where the general danger was obvious.  *Farmer*, 511 U.S. at 842.  For example, if the prisoner

> presents evidence showing that a substantial risk of inmate attacks was "longstanding, pervasive, well-documented, or expressly noted by

> prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk."

*Id.* at 842-43.  However, "a defendant can rebut a *prima facie* demonstration of deliberate indifference either by establishing that he did not have the requisite level of knowledge or awareness of the risk, or that, although he did know of the risk, he took reasonable steps to prevent the harm from occurring." *Beers-Capitol*, 245 F.3d at 133.

Defendants assert that Plaintiff Harvey cannot maintain a failure to protect claim because "it is undisputed that Officer Cline had no reason to be aware of a risk of harm." (Doc. No. 77 at 10.) They maintain that there "are simply no facts establishing a culpable level of intent or involvement on the part of Officer Cline with respect to [i]nmate Peterson entering [Plaintiff] Harvey's cell." (*Id.*) The Court, however, disagrees. In the verified complaint, Plaintiffs maintain that Defendant Cline was aware of inmate Peterson's "gang membership and assaultive behavior," as well as his "victimization of vulnerable inmates on E-Block and of the ongoing conflict created by Defendant Peterson upon Plaintiff Harvey." (Doc. No. 1 ¶¶ 18-19.) They assert that Defendant Cline watched inmate Peterson "walk across the tier to Plaintiff Harvey's cell, which is an unauthorized area for Defendant

25

Peterson," and did not stop him from doing so.  (*Id.* ¶¶ 20-21.)  Plaintiffs aver that Defendant Cline opened Plaintiff Harvey's cell door and observed inmate Peterson "enter into Plaintiff Harvey's cell in a rushed, deliberate and aggressive manner.  (*Id.* ¶¶ 22-23.)  Plaintiffs assert that Defendant Cline was aware that inmate Peterson often extorted other inmates "through intimidation [and] threats of force and physical stabbings."  (*Id.* ¶ 38.)

Defendants maintain that Plaintiff Harvey "admitted under oath that [i]nmate Peterson had never threatened him."  (Doc. No. 77 at 10.)  While this is so, the averments in Plaintiffs' verified complaint create a genuine issue of material fact as to whether Defendant Cline was aware that inmate Peterson posed a risk to Plaintiff Harvey's safety and chose to ignore that risk.  The Court notes that Defendants have not supported their argument with an affidavit or other sworn statement by Defendant Cline.  Such issues of fact will likely turn on a credibility assessment, a task in which this Court may not partake at the summary judgment stage.  *See Anderson*, 477 U.S. at 252.  Accordingly, the Court will deny summary judgment as to Plaintiff Harvey's Eighth Amendment failure to protect claim against Defendant Cline.[4]

---

[4] Plaintiffs also aver that Defendant Cline failed to protect Plaintiff Harvey from inmate Peterson during the second incident that occurred on November 7, 2017.  (Doc. No. 1 ¶¶ 67-68.)  As discussed above, Plaintiff Hawkins did not file a grievance regarding these events and, therefore, failed to exhaust his administrative remedies as required prior to filing this lawsuit.  In any event,

### b.   Denial of Medical Care

In the context of medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  In order to establish an Eighth Amendment deliberate indifference claim, a claimant must demonstrate "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse*, 182 F.3d at 197.  The "deliberate indifference" prong of the Eighth Amendment test requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.  Circumstantial evidence can

---

the record, including video footage of the incident, establishes that Plaintiff Hawkins was the initial aggressor. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (holding that videotape evidence "utterly discredited" the non-moving party's version of events and warranted summary judgment for the movant).  Plaintiff Hawkins, therefore, cannot "seek protection from the Eighth Amendment for harm that he himself caused." *Albudairy v. Deiter*, No. 4:07-cv-702, 2008 WL 11480561, at *4 (M.D. Pa. Apr. 18, 2008), *Report and Recommendation adopted*, 2008 WL 11480817 (M.D. Pa. May 16, 2008), *aff'd*, 307 F. App'x 604 (3d Cir. 2008).

establish subjective knowledge if it shows that the excessive risk was so obvious that the official must have known about it.  *See Beers-Capitol*, 256 F.3d at 133 (citing *Farmer*, 511 U.S. at 842)).  Moreover, "[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). Accordingly, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.*

In the complaint, Plaintiff Harvey alleges that Defendant Cline violated his Eighth Amendment rights by delaying access to medical care.  Plaintiff Harvey avers that he asked for medical attention after being assaulted by inmate Peterson, and that Defendant Cline did nothing despite observing Plaintiff Harvey's "bloody cell and stab wounds." (Doc. No. 1 ¶¶ 75-78.)  He alleges that the delay in receiving medical treatment caused him "to sustain further injury, pain, distress, anguish, and permanent scarring on his face, arm, and leg." (*Id.* ¶ 54.)  According to Plaintiff, when he was taken to the medical department following the second incident, medical personnel asked why his wounds were not called to their attention in a timelier

manner.  (*Id.* ¶ 49.)  Plaintiff Harvey's verified complaint is corroborated by his deposition testimony concerning delay in receiving medical care.  (Doc. No. 76-4.)

Defendants have not specifically addressed Plaintiff Harvey's denial of medical care claim.  They assert that any claim of deliberate indifference fails.  (Doc. No. 77 at 10.)  Defendants aver that Plaintiff Harvey "implies that Officer Cline did not do enough after immediately ordering [i]nmate Peterson out of [Plaintiff] Harvey's cell upon learning that he was present in the cell."  (*Id.* at 10-11.)  They mention that "Officer Cline testified that he discovered [i]nmate Peterson in the cell, and ordered him out, without being told of a fight or assault, and without seeing blood."  (*Id.* at 11 n.4.)  Defendants, however, do not indicate in what context Defendant Cline provided this testimony.  Moreover, Defendants have not supported their argument with an affidavit or other sworn statement by Defendant Cline.

In light of the foregoing, there are genuine issues of material fact regarding whether Defendant Cline delayed Plaintiff Harvey's receipt of medical care following the assault by inmate Peterson.  Plaintiff Harvey's averments could permit a reasonable juror to conclude that Defendant Cline knew that Plaintiff required medical care and did not promptly procure such care for him.  Such issues of fact, however, will likely turn on a credibility assessment, a task in which this Court may not partake at the summary judgment stage.  *See Anderson*, 477 U.S. at 252.

Accordingly, the Court will deny summary judgment as to Plaintiff Harvey's Eighth Amendment medical care claim against Defendant Cline.[5]

### 5.    First Amendment Retaliation Claim

To state a retaliation claim under the First Amendment, a plaintiff bears the burden of satisfying three (3) elements.  First, a plaintiff must prove that he was engaged in a constitutionally protected activity.  *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).  Second, a plaintiff must demonstrate that he "suffered some 'adverse action' at the hands of prison officials."  *Id.* (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)).  This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights."  *Id.* (quoting *Suppon v. Dadonna*, 2013 F.3d 228, 235 (3d Cir. 2000)).  Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him."  *Rauser*,

---

[5] Plaintiffs also appear to suggest that their Eighth Amendment rights were violated when medical treatment was delayed for the "injury caused by Defendant Cline's pepper spray attack."  (Doc. No. 1 ¶ 81.)  Plaintiffs assert that their injuries "from Defendant Peterson's stabbings were exacerbated as a result of Officer Cline assaulting them with his use of pepper spray."  (*Id.* ¶ 47.) As discussed *supra*, however, Plaintiff Hawkins failed to exhaust his administrative remedies with respect to his claims arising from the incidents that occurred on November 7, 2017 because he failed to file any grievances concerning those events.  Moreover, the verified complaint establishes that Plaintiffs were placed in handcuffs after Defendant Cline used pepper spray and escorted to the medical department.  (*Id.* ¶ 49.)  The record, therefore, does not demonstrate that medical care was delayed following the second incident.

241 F.3d at 333-34 (quoting *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events. *See Lape v. Pennsylvania*, 157 F. App'x 491, 498 (3d Cir. 2005). Only when the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, on its own, support an inference of causation. *See Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997). The Third Circuit has noted that an inmate can satisfy this burden "with evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action or (2) a pattern of antagonism coupled with timing that suggests a causal link." *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2002).

If a prisoner establishes a *prima facie* case of retaliation, the burden shifts to prison officials to show, by a preponderance of the evidence, that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at 334. "This is often referred to as the 'same decision defense.'" *Watson*, 834 F.3d at 422. If the prison officials

31

can make this showing, it defeats the retaliation claim.  *See Carter v. McGrady*, 292 F.3d 152, 159 (3d Cir. 2002).

In their complaint, Plaintiffs vaguely aver that they were "engaging in the constitutionally protected conduct of seeking medical treatment after being attacked and stabbed by [inmate] Peterson, by engaging in the grievance process and seeking access to the courts for remedies at law."  (Doc. No. 1 ¶ 93.)  They allege that "Defendant Cline and named Defendants and privities did engage in adverse actions against [them] . . . including loss, mishandling and not returning Plaintiff[s'] personal property, delaying call outs and missing sign up times for kiosk, phone, and haircuts."  (*Id.* ¶ 94.)  Plaintiffs suggest that these actions "were substantially motivated by the Plaintiffs engaging in the aforementioned constitutionally protected conduct."  (*Id.* ¶ 94.)

Defendants have not addressed Plaintiffs' retaliation claim.  At this juncture, the Court cannot properly consider the issue absent briefing from the parties. Accordingly, the Court will deny Defendants' motion for summary judgment without prejudice to their right to file a renewed motion addressing Plaintiffs' retaliation claim in the context of the standard set forth above.

32

###### 6.    Fourteenth Amendment Loss of Property Claim

In their complaint, Plaintiffs maintain that they suffered from "the loss of their personal property."  (Doc. No. 1 ¶ 97.)  They assert that Defendant Cline's actions led to the loss of their property.  (*Id.*)  In his deposition, however, Plaintiff Hawkins testified that he could not recall who lost his property.  (Doc. No. 76-5 at 35.)  In any event, neither negligent nor intentional deprivations of property by state officials give rise to a due process violation if state law provides adequate post-deprivation remedies.  *See Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

The Third Circuit has held that the DOC's grievance procedure constitutes an adequate post-deprivation remedy.  *See Monroe v. Beard*, 536 F.3d 198, 210 (3d Cir. 2008); *Tillman v. Lebanon Cty. Corr. Facility*, 221 F.3d 410, 422 (3d Cir. 2000). Pennsylvania state law also provides an adequate remedy for prison officials' unlawful deprivation of inmate property.  *See* 42 Pa. Cons. Stat. Ann. § 8522(b)(3); *see also Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011) (noting that the Pennsylvania Tort Claims Act provides adequate remedy for willful destruction of property).  Plaintiffs have presented no evidence that these avenues were rendered unavailable to them.  Thus, Defendants are entitled to summary judgment with respect to Plaintiffs' loss of property claims under the Fourteenth Amendment.

### 7.     Civil Conspiracy Claim

Plaintiffs also suggest that Defendants entered into a civil conspiracy to violate their civil rights.  (Doc. No. 1 ¶¶ 89, 96.)  To maintain an action for civil conspiracy under § 1983, a plaintiff must "prove that persons acting under color of state law 'reached an understanding' to deprive him of his constitutional rights." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 293-94 (3d Cir. 2018) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150-52 (1970)).  Moreover, "[b]are conclusory allegations of 'conspiracy' or 'concerted action' will not suffice to allege a conspiracy.  The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred." *Flanagan v. Shively*, 783 F. Supp. 922, 928 (M.D. Pa. 1992).  The plaintiff's allegations "must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each Defendant allegedly played in carrying out those objectives." *Id.*  A plaintiff cannot rely on subjective suspicions and unsupported speculation. *Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991).  Moreover, "to successfully counter a motion for summary judgment, a plaintiff must provide specific evidence establishing that defendants agreed among themselves to act against him either unlawfully or for an

unlawful purpose." *Payne v. Gordon*, 3:17-cv-1230, 2018 WL 3649026, at *11 (M.D. Pa. Aug. 1, 2018).

Here, Plaintiffs have failed to introduce into the record any evidence which shows an agreement or plan created and executed by Defendants that rises to the level of a conspiracy. Without such, Plaintiffs' conspiracy claims amount to nothing more than mere conjecture and bare speculation, which is not sufficient to demonstrate a genuine issue of fact as to the existence of an agreement designed to deny his constitutional rights. *See Young*, 926 F.2d at 1405 n.16. Accordingly, Defendants are entitled to summary judgment with respect to Plaintiffs' conspiracy claims.

## B.    State Law Claims

Plaintiffs maintain that Defendants' actions violated their rights under the Pennsylvania Constitution as well as state law. (Doc. No. 1 at 20-36.) For example, Plaintiffs appear to assert state tort claims for assault and battery, intentional infliction of emotional distress, loss of property, and negligence. (*Id.* at 23, 28.) Defendants, however, have not addressed Plaintiffs' state law claims, and at this juncture, the Court cannot properly consider the issue absent briefing from the parties. Accordingly, the Court will deny the motion for summary judgment without

prejudice to Defendants' right to file a renewed motion addressing Plaintiff's state law claims.

## V.    CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Doc. No. 75) will be granted in part and denied in part.  The motion will be granted with respect to: (1) Plaintiffs' § 1983 claims against Defendant DOC; (2) Plaintiffs' § 1983 claims against Defendant Ferguson; (3) Plaintiff Hawkins' § 1983 Eighth Amendment claims against Defendant Cline; (4) Plaintiffs' Fourteenth Amendment due process claims concerning the loss of property; and (4) Plaintiffs' § 1983 civil conspiracy claims against Defendants.  The motion will be denied with respect to: (1) Plaintiff Harvey's § 1983 Eighth Amendment failure to protect and denial of medical care claims against Defendant Cline; (2) Plaintiffs' First Amendment retaliation claims; and (3) Plaintiffs' state law claims against Defendants.   An appropriate Order follows.

s/ Sylvia H. Rambo
United States District Judge

Date: February 26, 2021

36